### F. Dusuan de la Croix *v.* Caliste Villere.

The destruction of forest and other trees is an irreparable injury from which parties may be restrained by injunction, and such injunction cannot be set aside *ex parte* under Article 307 of the Code of Practice.

| | |
|---|---|
| 11 | 39 |
| 46 | 83 |
| 11 | 39 |
| 49 | 584 |
| 11 | 39 |
| 52 | 105 |
| 52 | 1283 |
| 11 | 39 |
| f119 | 319 |
| 11 | 57 |
| f120 | 400 |

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J. *Janin*, for plaintiff and appellant. *Lavergne*, for defendant.

MERRICK, C. J. The plaintiff claims to be the owner of a plantation on the Mississippi river, adjoining that of the defendant. He alleges that he has had possession of the same since 1801, and that the boundaries between plaintiff and defendant had never been finally established. He prays that the boundary between himself and defendant may be surveyed and determined.

By a supplemental petition filed in June, 1853, the plaintiff alleges that by an agreement between himself and the defendant, they had caused at their joint expense the line to be run and marked between them by a surveyor selected by themselves.

He further alleges, that the defendant, in defiance of plaintiff's rights, has cut and carried away from the land of the petitioner, as exhibited on said survey, and as owned and possessed by him for many years, a considerable quantity of wood, and that petitioner has just reasons to apprehend that such of the wood cut, as still lies upon the ground, will be carried away, and more will be cut and carried away, unless he be prevented by the court.

Plaintiff prayed for an injunction as well as for damages, which he alleged he had sustained, amounting to $1000.

DE LA CROIX
v.
VILLERE.

The injunction having issued, the defendant, on the 11th of June, 1853, obtained an order *ex parte* to set aside the injunction upon the execution of his bond in favor of plaintiff, in the sum of $1200.

On the 24th day of August following, the plaintiff applied for and obtained another writ of injunction. In his second supplemental petition, he alleges, that the defendant, since his first injunction was set aside, has cut a large quantity of wood on petitioner's land, and that he employed almost all his slaves, both male and female, in cutting and carrying the wood away, and that he designedly ruins petitioner's land; and further alleges, that he verily believes the amount of wood cut upon plaintiff's land, by defendant, amounts to three thousand cords.

A second injunction issued as prayed for, and the wood which had been cut was sequestered.

On the 26th day of August, 1853, the defendant obtained another order *ex parte*, by which the writs of sequestration and injunction were set aside upon executing his bond in favor of the plaintiff, in the sum of $10,000.

The plaintiff then applied to the court for a rule upon the defendant to show cause why said *ex parte* orders should not be annulled, as having been issued *ex parte* and contrary to law, and why, in the meantime, the execution of said two orders should not be suspended.

The court refused to suspend the execution of the orders until the hearing of the motions, and the plaintiff appealed from the orders setting aside the injunction and the refusal of the Judge to suspend said orders.

The case in this court has been argued by brief on the part of the appellee alone.

The *ex parte* orders of the court setting aside the writs of injunction, were an erroneous application of Article 307 of the Code of Practice to this case. This Article allows the Judge to set aside the injunction whenever the act prohibited by the injunction is not such as may work an irreparable injury to the plaintiff, provided the defendant give bond, &c.

But it has always been held both in England and this country, that the destruction of forest and other trees was an irreparable injury from committing which the courts will restrain parties.

The defendant, however, contends that the damages to the land can be estimated in money, and that the bond is ample protection to the plaintiff. He cites the cases of *Jure* v. *First Municipality*, 2 An., 321; *Cobb et al.* v. *Parham*, 4 An., 147; and *Stetson et al.* v. *First Municipality*, 12 Rob., 488, in support of this position. By an examination of the cases referred to, it is apparent that they were cases in which the injury was readily appreciable in money, and where the continuance of the injunction was likely to work a more serious injury to the other party. The injury to real estate is a very different thing from that apprehended in the cases cited. It is often the case that a present estimate in money by witnesses of the damage done by cutting down trees belonging to another, would furnish no adequate compensation to the proprietor.

It may be that the timber trees threatened to be cut, are the only trees remaining upon a man's estate, and that he expects to obtain from them the timber for many years to come for the annual repairs of his buildings. It may be that the wood threatened to be cut is the only wood belonging to a sugar estate, and that the proprietor by care hopes to make the annual growth of the wood supply his yearly wants. To him his forests and cypress swamps have a

greater value than the mere amount in cash which his trees if cut would now    DE LA CROIX
bring in market.  The future value of his other lands and his money invested   VILLERE.
in improvements depend in a great measure upon the appendage of forests and
the standing timber of his cypress swamps.

It may be that the tree threatened to be cut, is one which he values as an
ornament to his dwelling, or one which, in his eyes, is sacred by its associations.
There are some things which bonds will not cover and which cannot be esti-
mated in dollars and cents, and if our law cannot fully protect the proprietor
in cases like these, it but poorly earns the encomiums which are bestowed
upon it.

But we have no doubt that it does furnish that protection, and that the des-
truction of forest trees is one of the most obvious cases of irreparable injury
to which its aid can be invoked.

It is therefore ordered, adjudged and decreed by the court, that the orders
setting aside the injunctions issued in this case, be annulled, and said injunc-
tions be reinstated, and that this cause be remanded to the lower court, there
to be proceeded in according to law, and that the defendant and appellee pay
the costs of the appeal.